WILLIAM Z. DEASON, Plaintiff v. J. KING HARRISON CO., INC. d/b/a J. KING HARRISON TRANSPORTATION CO., INC. and AMERICAN NATIONAL FIRE INSURANCE COMPANY, Defendants

No. COA96-1527

(Filed 21 October 1997)

**Insurance § 896 (NCI4th)— premises-operations coverage— completed operations exclusion—bales negligently loaded in trailer—injury when trailer door subsequently opened off-site**

The trial court did not err by concluding that defendant-insurer was entitled to a judgment in its favor where defendant Harrison loaded bales of fiber onto a trailer, plaintiff was injured when he opened the rear door of the trailer in Kansas City and a bale of fiber fell onto him, plaintiff alleged that defendant

---

Harrison had negligently loaded the trailer, and defendant-insurer had issued Harrison a premises-operations liability policy with a completed operations exclusion. Plaintiff's injuries arose from the use of the premises covered by the policy, but fell within the completed operations exclusion because they occurred off the premises and after the operations had been completed. The loading of bales was completed because everything necessary for the loading of bales at the site had been completed.

Judge WYNN dissenting.

Appeal by plaintiff from judgment dated 23 September 1996 by Judge Melzer A. Morgan, Jr. in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 August 1997.

*Waggoner, Hamrick, Hasty, Monteith and Kratt, PLLC, by S. Dean Hamrick and G. Bryan Adams, III, for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice, PLLC, by Richard T. Rice and Lawrence B. Somers, for defendants appellees American National Fire Insurance Company.*

GREENE, Judge.

William Z. Deason (plaintiff) appeals from a judgment denying his claim against American National Insurance Company (American National). The trial court granted judgment for the plaintiff against J. King Harrison Co., Inc., d/b/a J. King Harrison Transportation Company, Inc. (Harrison) and there is no appeal from that judgment.

The undisputed evidence reveals: Plaintiff is a resident of Missouri and Harrison is a North Carolina corporation with a place of business in Charlotte. American National is an insurance company authorized to do business in North Carolina and issued an Owners', Landlords' and Tenants' Liability Insurance policy (commonly known as a premises-operations policy[1]) to Harrison who was engaged in the sale of cotton and fiber products at 1605-09 North Brevard Street in Charlotte. This policy provides coverage for the "designated premises [1605-09 N. Brevard St., Charlotte, NC] and related operations in progress," including bodily injury "caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises

---

1. *See Lindley Chemical, Inc. v. Hartford Acci. and Indemn. Co.*, 71 N.C. App. 400, 403, 322 S.E.2d 185, 187 (1984).

and all operations necessary or incidental thereto." The policy contains the following exclusion, known as the "completed operations hazard":

> This insurance does not apply to
>
> (p) to bodily injury or property damage included within the completed operations hazard.

The policy also contains the following relevant definitions:

> "completed operations hazard" includes bodily injury and property damage arising out of operations . . . if the bodily injury or property damage occurs after such operations have been completed . . . and occurs away from premises owned by or rented to the named insured. . . . Operations shall be deemed completed . . . :
>
> . . . .
>
> (2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, . . .
>
> . . . .
>
>     Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

> (a) operations in connection with the transportation of property unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof.

On 1 March 1988, Harrison loaded bales of fiber onto the trailer of a tractor-trailer owned by J.B. Hunt Transportation, Inc. (Hunt). The trailer was transported to Kansas City arriving on 3 March 1988 where the plaintiff, an employee of Hunt, was injured when he opened the rear door of the trailer and a bale of fiber fell out of the trailer onto him.

Plaintiff filed suit against Harrison in Missouri, alleging Harrison had improperly loaded the trailer. American National denied cover-

**DEASON v. J. KING HARRISON CO.**

[127 N.C. App. 514 (1997)]

age and advised Harrison that it would not provide a defense to the claim. Plaintiff obtained a final judgment against Harrison in the amount of $1,055,000.00. The judgment contained a finding that Harrison was negligent in loading the bales of fiber onto the trailer.

When Harrison did not pay the judgment, plaintiff filed this action in North Carolina against Harrison and American National. American National filed an answer denying liability under the policy to plaintiff or Harrison. Harrison did not file an answer. The trial court entered judgment against Harrison in the amount of the underlying Missouri judgment, but concluded as a matter of law that American National was entitled to a judgment in its favor because plaintiff's injuries fell within the "completed operations hazard" exclusion of the insurance policy.

---

The dispositive issue is whether this "premises-operations" liability insurance policy, containing a "completed operations hazard" exclusion, provides coverage for injuries sustained off premises, but resulting from negligence occurring on the insured's premises.

It is well-settled law that an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto, *Harrelson v. Insurance Co.*, 272 N.C. 603, 609, 158 S.E.2d 812, 817 (1967), and exclusions from coverage must be strictly construed. *Stanback v. Westchester Fire Ins. Co.*, 68 N.C. App. 107, 114, 314 S.E.2d 775, 779 (1984).

In this case the injuries sustained by the plaintiff did arise "out of the . . . use of the" premises covered in the policy. At the same time the injuries sustained by the plaintiff fall within the "completed operations" exclusion in that they occurred off the premises *and* after the "operations" (the loading of the bales of fiber) had been completed. The loading of the bales was "completed," within the meaning of the policy, because everything necessary for the loading of the bales onto the truck trailer "at the site" had been completed. Furthermore, the fact that the bales of fiber may have been loaded negligently is not material to a determination of whether the loading was a "completed operation."[2] Indeed the policy specifically provides that any opera-

---

2. If negligence prevents an operation from being complete until the negligence is detected, then the completed operations hazard exclusion would be illusory and the insurer's liability would extend far beyond the limits of the intended coverage. Roger C. Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 436-438 (1971). Premises-operations liability policies are intended to limit the insurer's liability for an

**DEASON v. J. KING HARRISON CO.**

[127 N.C. App. 514 (1997)]

tion that may "require further service or . . . correction" is none-theless "completed" within the meaning of the policy. Finally, the exception to the "completed operations" exception (injuries arising out of the "*operations in connection with the transportation of property*") does not apply because the "operations" at issue specifically relate to the "loading" of a vehicle.

Our holding comports with this Court's decision in *Lindley*, which involved a premises-operations policy with the same "completed operations" exclusion contained in this case. *Lindley*, 71 N.C. App. at 403-04, 322 S.E.2d at 187-88. The insured in *Lindley* sold and delivered a cleaning solvent to a customer whose employee used the product at the customer's premises. *Id.* at 402, 322 S.E.2d at 187. The solvent ignited and severely burned the employee. *Id.* This Court held that the premises-operations policy did not provide coverage for the off-premises bodily injuries sustained by the employee and caused by the on-premises negligence of the insured, noting that the insured had handed over possession of the product. *Id.* at 403-04, 322 S.E.2d at 187-88.

In so holding we reject the plaintiff's contention that *Woodard v. Insurance Co.*, 44 N.C. App. 282, 261 S.E.2d 43 (1979), *disc. review denied*, 299 N.C. 546, 265 S.E.2d 406 (1980) and *Daniel v. Casualty Co.*, 221 N.C. 75, 18 S.E.2d 819 (1942) require a different result. Although both of those cases did extend coverage to off-premises injuries, neither involved the construction of a "premises-only" policy and are therefore simply inapplicable to this case.

Affirmed.

Judge MARTIN, Mark D., concurs.

Judge WYNN dissents with separate opinion.

Judge WYNN dissenting

J. King Harrison Co., Inc. purchased a premises-operations policy covering acts of negligence occurring on its premises. As a result of a negligent act by company employees on the company's premises, Mr. Deason was injured. Would a reasonable business expect to be

---

operation to its logical point of completion. To hold, as plaintiff argues, would convert premises-operations policies into comprehensive general liability policies without requiring payment of the additional premiums.

**DEASON v. J. KING HARRISON CO.**

[127 N.C. App. 514 (1997)]

covered under that policy for an act of negligence committed on the business premises which resulted in an injury off premises? I think so, and therefore dissent from the majority's holding to the contrary.

In the instant case, the policy begins with a plain statement that coverage included liability for bodily injury and property damage "caused by an occurrence and arising out of the ownership, maintenance, or use of the insured premises." After setting forth this brief description of the policy's coverage, the policy goes on to list seventeen exclusions from coverage. In order to deny coverage under this policy, the insurer relied on the sixteenth exclusion, which limited coverage:

(p) to bodily injury or property damage included within the completed operations hazard or the products hazard.

The definitions section of the policy defines "completed operations hazard" as:

bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts, equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principle as part of the same project.

Operations which may require further service or maintenance work or correction, repair, or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) operations for which the classification stated in the policy or in the company's manual specifies "including completed operations."

In my opinion, the meaning of "completed operations hazard" is ambiguous under this policy. Ambiguities in insurance polices are strictly construed against the insurance company and in favor of the insured and coverage.[1] This rule is particularly appropriate when construing exclusions from coverage, which are not favored by the law.[2] Furthermore, policy provisions which extend coverage are construed liberally in favor of coverage.[3] Finally, when an ambiguity exists, our case law has consistently held that it should be construed as a reasonable person in the position of the insured would have understood it to mean.[4]

A reasonable business in the position of the insured company would have understood claims such as Deason's to be covered. By the policy's terms of coverage, the company was protected for liability "caused by an occurrence and arising out of the ownership, maintenance, or use of the insured premises." A company purchasing such a policy would certainly expect to be protected if the business operations injured a pedestrian walking on the street in front of the business. There would be no less of an expectation of protection if the effect of the operations was felt at a distance from the premises.

Furthermore, to insure for the act under the circumstances of this case but not the injury that arises from the act appears to defy

1. *West American Insurance Co. v. Tufco Flooring East*, 104 N.C. App. 312, 320, 409 S.E.2d 692, 697 (1991), *disc. review denied*, 332 N.C. 479, 420 S.E.2d 826 (1992).

2. *Id.*

3. *C.D. Spangler Constr. Co. v. Industrial Crankshaft & Eng'g Co.*, 326 N.C. 133, 142, 388 S.E.2d 577, 563 (1990).

4. *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 43, 243 S.E.2d 894, 897 (1978).

logic. The injury that occurred here is precisely the type of liability that companies seek to insure in order to protect their company operations from potential multi-million dollar liability. Otherwise, the business would be exposed to substantial sources of liability, even though the company purchased protection from liability "caused by an occurrence and arising out of the ownership, maintenance, or use of the insured premises."

I would construe this policy as providing coverage so as not to defeat the reasonable expectations of the insured company in this case.